## A99A1246. THE STATE v. LONG.
### (521 SE2d 401)

ELDRIDGE, Judge.

The State appeals from a Houston County State Court order granting Nathan Baxter Long's motion to suppress the results of his urine test which showed positive for the presence of marijuana.

On June 20, 1997, Houston County Deputy J. Sendek and his partner, Deputy Quinones, were stationed at the intersections of Kersey and Hodge Roads in Houston County. Drug sales had been reported in this rural area, and Sendek was a trained narcotics officer. At approximately 8:00 p.m., Sendek stopped Nathan Long for weaving down Hodge Road. The stop was captured on videotape.

Initially, Deputy Sendek asked Long to exit the car and walk to the back of the vehicle in view of the video camera. At the hearing on the motion to suppress, Sendek testified that Long smelled strongly of marijuana; that his eyes were red and glassy; and that Long was nervous, perspiring, and trembling. After determining that Long and his passenger, Clinton Payne, were "just out riding," Deputy Sendek went to the passenger window to interview Payne. At the motion hearing, Sendek testified that when Payne rolled down the window, "I could smell a strong odor of burnt marijuana almost smelling like it was smoldering and burning inside the vehicle."

The evidence shows that Deputy Sendek then returned to the back of the vehicle to continue his interview with Long. He obtained Long's driver's license and insurance card and informed Long that if a driver's license check showed no violations, he would issue Long a warning for failure to maintain a lane. Long waited in his car while

Sendek performed the driver's license check.

During the course of the license check, Deputy Quinones approached Long's vehicle and, through the driver's window, engaged both Long and Payne in conversation which was not picked up by the audio feature of the video camera. However, when Quinones returned to the police vehicle, his subsequent conversation with Sendek showed that both deputies recognized that Long's passenger, Clinton Payne, had been arrested several days earlier for marijuana; that Long's eyes were extremely red and "all washed out"; that both Long and Payne "were scared to death"; and that the officers were "fixin to ask them if [they could] search the vehicle." No mention was made of the odor of marijuana about which Deputy Sendek testified at the motion hearing.

Long's driver's license check showed no violations. Sendek exited his police vehicle and asked Long to re-join him at the back of Long's car. He issued Long a warning and a short lecture on the dangers of failing to maintain a lane. At the conclusion thereof, Sendek stated, "Let me ask you something before you go on. . . ." Sendek then informed Long that, as a part of his job, he investigates and searches for contraband. Sendek explained that he considered contraband items like weapons and drugs. Sendek asked Long for permission to search the vehicle. As specific reasons for the search, Sendek told Long that Long's eyes were red, his face was red, and he was present in a high drug crime area. No mention was made of the odor of marijuana about which Deputy Sendek testified at the motion hearing.

In response to Sendek's request to search, Long stated "I don't really want you to, but there's nothing in there." Deputy Sendek interpreted this answer as a qualified acquiescence to the search. At the motion hearing, Sendek testified that if Long had refused, and "[i]f he had turned around and walked away, I probably would have stopped him and talked to him about the marijuana." Deputies Sendek and Quinones then proceeded to search Long's car. Under the passenger seat, the deputies located a marijuana pipe with the remains of marijuana in the bowl; the pipe was still warm. The remains of a marijuana cigarette were found in the car's ashtray. Long was charged with failure to maintain a lane; possession of marijuana; and driving under the influence of drugs. Long's subsequent urine test came back positive for the presence of marijuana.

At the motion to suppress hearing, Long contended that the urine test was the result of an illegal arrest based upon a warrantless search of his car without consent and without probable cause to search. The trial court granted the motion, holding:

> After the Defendant had been advised that he would only be given a warning for weaving, the probable cause for

the stop in this case had ended. After the Defendant refused to permit a search of his vehicle by Officer Sendek, Officer Sendek did not have the right to search the vehicle without a warrant.

*Held*:

The trial court's findings were erroneous as a matter of law. The court erroneously equated "probable cause"[1] to stop a vehicle with probable cause to search. The court then further compounded its error by determining that, absent consent, the deputy could not search Long's car without a warrant. Not present in the trial court's legal analysis is the recognition that probable cause to search may develop during the course of a legitimate investigative stop. The development of such probable cause is not contingent upon the rationale for instigating the stop in the first place. See, e.g., *Temples v. State*, 228 Ga. App. 228, 230-231 (491 SE2d 444) (1997). The failure to issue a citation on an underlying traffic offense — or even an acquittal thereon — is of no consequence in determining the existence of probable cause. *Hicks v. State*, 221 Ga. App. 735, 739 (472 SE2d 474) (1996). Moreover, the existence of probable cause is an inquiry independent of the issue of "consent."

Thus, the question is whether, during the course of the legitimate stop for a traffic offense, the evidence shows that probable cause developed so as to provide a basis for Deputy Sendek's search of Long's car.

We have held that the odor of marijuana emanating from a car and driver, along with physical characteristics such as those manifested by Long, may provide probable cause to search a vehicle. *O'Keefe v. State*, 189 Ga. App. 519, 526-527 (376 SE2d 406) (1988); *Williams v. State*, 187 Ga. App. 409 (370 SE2d 497) (1988). Thus, factually, probable cause to search may be present in this case. However, such is a determination for the trial court to make under a totality of the circumstances analysis, including a determination of the credibility of the witnesses. *Pattman v. State*, 208 Ga. App. 770, 771-772 (431 SE2d 706) (1993).

In that regard and without expression of opinion, we note that on the videotape, when telling Long his specific reasons for searching Long's car, Deputy Sendek did not include the smell of marijuana as

---

[1] "Probable cause" is not the standard for an investigative stop of a vehicle. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. (Citations and punctuation omitted.) *Fritzius v. State*, 225 Ga. App. 642, 643 (484 SE2d 743) (1997).

a basis for the search. Nor did Sendek and his partner mention such odor when privately discussing a potential search of Long's car. Apparently, the odor of marijuana as a basis for the warrantless search was first mentioned in a police report Deputy Sendek wrote after the search and Long's arrest. In the court below, Long argued that the deputy's testimony regarding the smell of marijuana "raises an issue of credibility as to whether or not that was merely used as a pretext to justify the search." Before this Court, while conceding that the odor of marijuana would provide probable cause to search, Long again asserts that such odor was not present.

Accordingly, under the facts of this case, a legitimate credibility issue was raised with regard to Deputy Sendek's testimony at the hearing on the motion to suppress, which issue must be addressed for the proper resolution of the instant motion. This Court cannot make such credibility determination on the record before us. Thus, we remand this case for the trial court to determine whether, after the traffic stop, probable cause developed so as to provide a basis for Deputy Sendek's warrantless search of Long's car.

*Judgment vacated and remanded for proceedings not inconsistent with this opinion. Pope, P. J., and Smith, J., concur.*

DECIDED JULY 29, 1999.

A. Robert Tawse, Jr., Solicitor, for appellant.
Robert E. Turner, for appellee.

