**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 15, 2018**

# In the Court of Appeals of Georgia

A17A1433. THE STATE v. PLAINES.

BRANCH, Judge.

After Andre Plaines was charged with second-degree burglary, second-degree criminal damage to property, possession of tools for the commission of crime, and smash-and-grab burglary, the State filed a motion of its intention to introduce other-act evidence of a different second-degree burglary in the same county to which Plaines had pled guilty. The trial court denied the State's motion on the ground that the other-act evidence was not relevant under OCGA § 24-4-404 (b). On appeal from this ruling, the State argues that this other-act evidence is relevant and that the trial court therefore abused its discretion when it denied the State's motion. Because we agree, we vacate the trial court's judgment and remand for further proceedings consistent with this opinion.

"A trial court's decision under OCGA §§ 24-4-403 and 24-4-404 (b) to exclude or admit other acts evidence will be overturned only where there is a clear abuse of discretion." *State v. Dowdell*, 335 Ga. App. 773 (783 SE2d 138) (2016) (citation and punctuation omitted). In our review, we

> must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that [we] generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although [we] may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.

*State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015) (citations and punctuation omitted).

Construed in favor of the trial court's findings and judgment, the record shows that at the hearing on the admissibility of the other-act evidence, a detective with the Savannah Chatham Metropolitan Police Department testified about the instant crime, a burglary of a Red and White grocery store in which an orange circular saw was used to cut around the cash box of an ATM, as well as the other act, a burglary of a Food Lion grocery store in which an orange circular saw was also used to cut into an ATM. The trial court asked the detective whether in his investigation of burglaries he had

2

ever seen a circular saw used in that manner. The detective responded, "I have never, sir, not until this came -- came up, and then there were several other investigators working other incidents similar to this. That was the only time I've ever heard of somebody using a concrete saw to cut into an ATM machine, and those were all within a very close proximity of these crimes." The trial court then filed an order finding that the evidence of the Food Lion burglary was relevant, probative, and admissible at Plaines's trial for the Red and White burglary.

At some later point, the State informed the trial court that the detective's testimony was inaccurate. The court conducted two additional hearings: one at which the detective testified that he was aware of a third burglary where a circular saw was used to cut into an ATM, and one at which a different law enforcement officer testified about the third burglary. After these hearings, the trial court ruled that evidence of the Food Lion burglary was not admissible in the prosecution for the Red and White burglary. In its second order on the issue, the trial court made the following findings of fact concerning the Red and White burglary:

> On the night of February 3, 2015, three unknown individuals entered the premises of a Red and White grocery store with the use of a crowbar.

3

One of the three suspects was carrying a black crowbar and another was carrying a yellow crowbar.

The suspects pried open the sliding doors to the business; once inside, they used an orange concrete saw to cut into the ATM in the spot required to remove the cash box without damaging it.

The suspects fled in a grey F-250 truck that had been reported stolen.

The trial court made the following findings of fact concerning the Food Lion burglary:

On February 26, 2015, Plaines entered the Food Lion, a grocery store located in Port Wentworth, Georgia. It was night time and the store was closed.

Plaines and another individual pried open the first set of doors and then broke the second set of sliding glass doors.

Plaines entered the store with an orange Husqvarna concrete saw that he used to cut into the front portion of the ATM, located at the front of the store.

Officers responded to the alarm and witnessed Plaines cutting into the ATM with the circular concrete saw.

Officers approached Plaines, who ran from them.

4

They apprehended Plaines in the deli portion of the store.

The police located no other individuals in the premises.

Plaines pled guilty to this offense.

The trial court also noted that at the first hearing, the detective testified that he had never seen a concrete saw used to cut into an ATM before the Red and White and Food Lion incidents, whereas at the second hearing, the detective testified that he was aware of a burglary in Bryan County where a circular concrete saw was used, although it was not clear whether the saw was similar to the saw used at the Red and White.

The court found that there were similarities between the two burglaries: the fronts of both stores were entered with crowbars; the ATMs were cut into with orange circular concrete saws; and the saws appeared to be identical. But the trial court also found differences in that there were three individuals involved in the Red and White burglary and only two involved in the Food Lion burglary (although only one was apprehended); only one individual, Plaines, entered the Food Lion, while the surveillance video of the Red and White burglary shows three individuals inside the store; and the stolen F-250 was only present at the Red and White burglary. The court

5

also noted the inconsistency in the detective's testimony regarding the uniqueness of using a concrete saw to access an ATM. The trial court concluded that "nothing" linked Plaines to the use of an orange concrete saw in the Red and White burglary and that the use of this implement was not "so unique [as] to demonstrate a modus operandi or signature crime." The trial thus held that the evidence of the Food Lion incident was irrelevant such that it need not consider whether the probative value of that evidence outweighed its prejudicial effect.

On appeal from this judgment,[1] the State argues that because Plaines's identity was established as the perpetrator of the Food Lion burglary, and because the Red and White burglary showed a modus operandi in common with the Food Lion burglary, the trial court abused its discretion when it concluded that evidence of the Food Lion burglary was irrelevant as to the Red and White burglary. We agree.

OCGA § 24-4-404 (b) provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including,

---

[1] See OCGA § 5-7-1 (a) (5) (authorizing a direct appeal "[f]rom an order, decision, or judgment excluding any other evidence to be used by the state at trial on any motion filed by the state or defendant").

but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident. . . .

(Emphasis supplied.) As our Supreme Court has noted, "[e]ven relevant evidence offered for a proper purpose under Rule 404 (b) may be excluded under OCGA § 24-4-403 . . . 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *State v. Jones*, 297 Ga. 156, 158 (773 SE2d 170) (2015) (quoting OCGA § 24-4-403). In order for other-acts evidence to be admissible,

> the State must make a showing that: (1) evidence of extrinsic, or other, acts is *relevant* to an issue other than a defendant's character, see Rule 404 (b); (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.

Id. at 158-159 (emphasis supplied).

It is true that other-acts evidence offered under OCGA § 24-4-404 (b) to prove identity "must satisfy a particularly stringent analysis," including that the other act is "a 'signature' crime [with] the defendant [using] a modus operandi that is uniquely

7

his." *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016) (citation and punctuation omitted). And a trial court must "consider the dissimilarities as well as similarities in determining whether other acts evidence is admissible to show identity." Id. (citation omitted). It is equally true, however, that Rule 404 (b) is "an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence." *Jones*, 297 Ga. at 159, citing *States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

As our Supreme Court explained in *Olds v. State*, 299 Ga. 65 (786 SE2d 633) (2016): "Relevance and probative value are related, but distinct, concepts. Relevance is a binary conceptm — evidence is relevant or it is not — but probative value is relative." Id. at 75. Specifically, evidence is relevant if it has "*any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401 (emphasis supplied); see also *Jones*, 297 Ga. at 159 (2) ("Regardless of how one views the language of Rule 401, . . . it is clear that the relevance standard codified therein is a liberal one"). Thus

evidence that an accused committed an intentional act generally is relevant to show — the evidence, in other words, has some tendency to make more or less probable — that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in similar circumstances.

*Olds*, 299 Ga. at 72 (citations omitted).

Thus in *Brannon v. State*, 298 Ga. 601 (783 SE2d 642) (2016), and in accordance with these principles, our Supreme Court affirmed the relevance and admissibility of other-act carjackings occurring 13 days apart in the same county to prove identity when both involved the theft of a car with distinctive tire rims as well as the defendant waiting in his co-defendant's mother's car while the co-defendant shot each car's owner. Id. at 607 (3) ("the modus operandi for each carjacking was sufficiently similar to mark the offenses as appellant's handiwork"). Likewise, in *Dixon v. State*, 320 Ga. App. 257 (739 SE2d 737) (2013), we held that evidence of an armed robbery committed by a person carrying a "dark backpack with a distinctive white design on the front" was admissible as a sufficiently similar transaction for the purpose of proving the identity of the person accused of the same crime in the case-in-chief. As we noted:

> [E]ven if the independent crime and the charged crime are essentially dissimilar in their factual details, the independent crime is properly admitted to prove the identity of the perpetrator if there is a "logical connection" linking it to the charged crime such that proof of the former tends to prove the latter.

Id. at 263 (1) (citation and punctuation omitted). We concluded that "evidence that the robber used the same distinctive backpack" in the two robberies "logically connected them to one another" such that a trial court did not err in admitting evidence of four different armed robberies in one county to prove that the defendant "was the perpetrator" of the charged armed robbery. Id. at 264 (1) (a).

Here, the two burglaries at issue both occurred in Chatham County within three weeks of each other and used virtually identical tools (crowbars and an orange concrete saw) as well as methods (prying doors and breaking windows) to accomplish the objective of obtaining cash from an ATM after business hours. This trial court thus committed clear error when, in the face of its own finding that crowbars and an orange concrete saw were used in both crimes, including the one to which Plaines pled guilty, it concluded that there was "nothing" connecting Plaines to the use of these tools in the Red and White burglary such that his guilty plea in the Food Lion case was irrelevant. On the contrary, the State has established a "logical connection"

10

between the two burglaries on the issue of Plaines's identity, based on more than a mere inference of Plaines's propensity to commit burglary, sufficient to satisfy the first test of relevance for admissibility of that other-acts evidence under Rule 404 (b). See *Brannon*, 298 Ga. at 607 (4); *Dixon*, 320 Ga. App. at 263. Further, this logical connection between the modus operandi of the two incidents was sufficient to outweigh those dissimilarities found by the trial court, such as the presence of three rather than two individuals at or the use of a stolen F-250 in the Red and White burglary. We also note that Plaines's guilty plea to the Food Lion charges satisfies Rule 404 (b)'s third requirement of "sufficient proof to enable the jury to find that the accused committed" those other acts as a matter of law. *Brooks*, 298 Ga. at 724, citing *Jones*, 297 Ga. at 158-159; see also *Brannon*, 298 Ga. at 608 (4) (guilty plea as to another act satisfied Rule 404 (b)'s third requirement of sufficient proof that a defendant committed that act).

Because the trial court clearly erred when it concluded that Plaines's involvement in the Food Lion burglary had no relevance as to the issue of his identity and participation in the Red and White burglary, we vacate its judgment and remand with direction that the trial court perform a discretionary balancing test as to whether the similarities between the Red and White burglary and the Food Lion burglary make

11

the latter "highly probative" as to Plaines's identity and participation in the Red and White burglary. See *Jones*, 297 Ga. at 163 (as to the second test of Rule 404 (b) admissibility, "a trial court must undertake in each case a considered justification for the admission of [the other-acts] evidence and make an independent determination of whether the probative value of the evidence 'is substantially outweighed by the danger of unfair prejudice'") (quoting Rule 403); see also *United States v. Delgado*, 56 F3d 1357, 1366 (11th Cir. 1995) ("the greater the government's need for evidence" on a particular issue such as identity or intent, "the more likely that the probative value will outweigh any possible prejudice") (citation and punctuation omitted).

*Judgment vacated and case remanded with direction. Bethel, J., concurs. McFadden, P. J., dissents.*\*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A17A1433. THE STATE v. PLAINES.

MCFADDEN, Presiding Judge, dissenting

The state has not shown that the trial court abused his broad discretion in ruling that the state cannot introduce at Plaines's trial other-act evidence under OCGA § 24-4-404 (b) to prove identity. Consequently, although we may have ruled differently had the issue been ours to decide in the first instance, we must affirm the trial court's decision.

"A trial court's decision under OCGA §§ 24-4-403 and 24-4-404 (b) to exclude or admit other acts evidence will be overturned only where there is a clear abuse of discretion." *State v. Dowdell*, 335 Ga. App. 773 (783 SE2d 138) (2016) (citation and punctuation omitted). In our review, we

> must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that [we] generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although [we] may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.

*State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015) (citations and punctuation omitted).

Other-act evidence, although inadmissible to show an accused's propensity to commit a crime, may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b).

> To determine whether other acts evidence is admissible for these purposes under the new Evidence Code, the [s]tate must satisfy a three-part test: (1) the evidence needs to be relevant to an issue other than bad character; (2) the probative value of the other acts evidence cannot be outweighed substantially by its unfair prejudice; and (3) there must be sufficient proof to enable the jury to find that the accused committed the other acts.

*Brooks v. State*, 298 Ga. 722, 724 (2) (783 SE2d 895) (2016) (citation omitted).

The state sought to introduce the other-act evidence as relevant to prove Plaines's identity as the perpetrator of the Red and White burglary. The trial court implicitly ruled that the evidence was not relevant because the other-act evidence was not sufficiently similar to the instant crime so as to prove identity.

> Evidence offered to prove identity must satisfy a particularly stringent analysis. When extrinsic offense evidence is introduced to prove

2

identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a "signature" crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed to ensure that the government is not relying on an inference based on mere character — that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act.

*Brooks*, 298 Ga. at 725 (2) (citation and punctuation omitted). "A much greater degree of similarity between the charged crime and the [other] crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind." *United States v. Cardenas*, 895 F2d 1338, 1342 (11th Cir. 1990) (citation and punctuation omitted). Under our new Evidence Code, the trial court must "consider the dissimilarities as well as similarities in determining whether other acts evidence is admissible to show identity." *Brooks*, 298 Ga. at 725 (2) (citation omitted).

Here, as the majority observes, the trial court found that there were similarities between the two burglaries: the fronts of both stores were entered with crowbars; the ATMs were cut into with orange circular concrete saws; and the saws appeared to be

3

identical. But the trial court also found that there were differences: there were three individuals involved in the Red and White burglary and only two involved in the Food Lion burglary (although only one was apprehended); only one individual, Plaines, entered the Food Lion, while the surveillance video of the Red and White burglary shows three individuals inside the store ; and the stolen F-250 was only present at the Red and White burglary.

Further, the court noted the inconsistency in the detective's testimony regarding the uniqueness of using a concrete saw to access an ATM. The detective's testimony was the *only evidence* the trial court mentioned in his order about the uniqueness of the crime. See *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (we must focus on the facts found by the trial court in its order since the trial court sits as the trier of fact) (citation omitted). The court concluded that it could not "say that the use of the concrete saw to access the ATM is so unique to demonstrate a modus operandi or signature crime," and thus that the state did not meet the first part of the three-part test set forth at *Brooks*, 298 Ga. at 725 (2). So the court did not address the remaining parts of the test.

In seeking reversal, the state points to similarities between the two crimes that the trial court did not find as fact. For example, the state argues that the trial court

4

ignored the fact that the exact same tools were used in both crimes. But the trial court did not find that the perpetrator of the Red and White burglary used the same orange Husqvarna saw as Plaines did in the Food Lion burglary, only that the perpetrator used an orange concrete saw that appeared identical but that nothing linked it to Plaines. The state argues that Plaines is seen in the video of the Food Lion burglary using a crowbar of the same color as one of the crowbars used in the Red and White burglary. But the trial court made no finding of fact regarding the color of the crowbar in the Food Lion burglary, and from our review of the surveillance video, the color of the crowbar is not "indisputably discernible." *State v. Allen*, supra, 298 Ga. at 2 (1) (a) (citation and punctuation omitted). The state argues that the detective testified that both ATMs exhibited very similar cuts around the cash box, but the court made no findings regarding the location of the cuts in the Food Lion ATM.

Properly applied,

the abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach, and that there will often be occasions in which we will affirm the evidentiary ruling of a trial court even though we would have gone the other way had it been our call. . . . [The standard] does not permit a clear error of judgment or the application of the wrong legal standard.

5

*Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) (citations and punctuation omitted). So it is not surprising that the majority has failed to cite a single case in which we or our Supreme Court reversed a trial court's decision to exclude other-act evidence.

In this case, the state has not shown error in the trial court's performance of the "particularly stringent" analysis required. *Brooks*, 298 Ga. at 725 (2). Nor has the state shown the application of the wrong legal standard. And it was the trial court's responsibility to assess the credibility of the detective's testimony about the uniqueness of this type of crime. For these reasons, I cannot say that the trial court abused his discretion in ruling that the evidence of the Food Lion burglary is inadmissible at Plaines's trial for the Red and White burglary. See *Dowdell*, 335 Ga. App. at 773.